UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **ALLIED INSURANCE CO.** ) | |
| **OF AMERICA, as subrogee to Gloss** ) | |
| **Roots by Escarlate, LLC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 1:19-cv-00237-SNLJ |
| ) | |
| **JPAULJONES L.P. and TEK** ) | |
| **ELECTRICAL CO., LTD.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant JPaulJones L.P.'s ("JPJ") motion to dismiss for lack of personal jurisdiction (ECF #11). Following the filing of that motion, plaintiff Allied Insurance Co. of America filed a separate motion for jurisdictional discovery (ECF #16), which this Court partially granted "because [JPJ had] consented [to discovery]." (ECF #20). In granting jurisdictional discovery, this Court further allowed the parties to file supplemental briefing should they choose—both did so. (ECF #30, 31). Now being fully informed of the issues at hand, this Court will **GRANT** the motion and JPJ shall be **DISMISSED without prejudice**.

## I. BACKGROUND

Plaintiff brings this case as subrogee to Gloss Roots Boutique, which suffered a fire at one of its hair salon and retail stores located in Fredericktown, Missouri, in 2018. Plaintiff says the fire was caused by a defective EyeVac vacuum, Model SE1850, that JPJ

1

"imported … from [co-defendant] TEK [Electrical Co., Ltd.] and distributed and sold same in the United States and the State of Missouri under JPJ's name and brand." Plaintiff "reimbursed Gloss Roots in full under the relevant [insurance] policy" and now seeks to assert strict liability and negligence claims against JPJ and TEK to recover as "bona fide contractual and equitable subrogee." JPJ, though, has moved to dismiss the case against it arguing a lack of personal jurisdiction over it in Missouri.

JPJ is a limited partnership organized under the laws of Texas with its principal place of business in Texas. TEK is a Chinese company with its principal place of business in China. TEK has yet to be served and has not voluntarily appeared before the Court; therefore, TEK is not addressed further in this Order. Through the briefing on JPJ's motion to dismiss, both sides concede that general jurisdiction is inapplicable. Instead, JPJ and plaintiff focus on the issue of specific jurisdiction—that is, "case-linked jurisdiction" that requires this case to "arise out of or relate to [JPJ]'s contacts with [Missouri]." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). Though plaintiff tangentially references possible third-party distributor relationships that may have sold product into Missouri, the arguments primarily revolve around the issue of JPJ operating a website that allows for the direct sale of EyeVac vacuums into Missouri. It is conceded that JPJ has no physical locations, employees, or assets in Missouri. Accordingly, the issue of JPJ's website, and what effect it has on specific jurisdiction, is addressed below.

2

## II. ANALYSIS

The Supreme Court has recognized the internet as "a unique and wholly new medium of worldwide human communication." *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 850 (1997). But, "the analysis applicable to a case involving jurisdiction based on the internet … should not be different at its most basic level from any other personal jurisdiction case." *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 226-227 (5th Cir. 2012) (quoting 4A Charles Alan Wright et al., Fed. Prac. & Proc., § 1073.1, at 327 (3d ed. 2002) [hereinafter Wright et al.]). The Due Process inquiry, thus, remains unchanged: (1) did plaintiff's cause of action arise out of or result from the defendant's forum-related contacts? (2) did defendant purposely direct its activities towards the forum state or purposefully avail itself of the privileges of conducting activities there? (3) would the exercise of personal jurisdiction over defendant be reasonable and fair? *Id.* (citing Wright et al. at 334); *see also Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co. KG*, 646 F.3d 589, 593-594 (8th Cir. 2011); *Advanced Tactical Ordinance Sys., LLC. v. Real Action Paintball, Inc*., 751 F.3d 796, 803 (7th Cir. 2014) (concluding that a special test is not required for assessing internet contacts, but instead the "inquiry boils down to this: has defendant purposefully exploited the [forum] market beyond simply operating an interactive website").

The parties focus primarily on the second element: did JPJ purposely direct its activities towards Missouri, or else purposefully avail itself to the privileges of conducting business there, by operating a website that sells products to Missourians? JPJ's website for the EyeVac product—*www.eyevac.com*—is a fairly typical

3

representation of modern website "interactivity," teaching consumers through embedded video and pictures how the product works and why it merits purchasing.[1] As far as it "targeting" Missouri, plaintiff points to two exhibits showing that, during checkout, a consumer can select "Missouri" as a shipping location from a dropdown box. Plaintiff says the website, taken as a whole, is "highly interactive and specifically directed to Missouri residents," pointing also to an affidavit by one of its forensic experts, Will Trust, who "recently purchased an EyeVac to his business location in Missouri."

Plaintiff's focus on the "interactivity" of the website is in appreciation of the analysis undertaken in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997). *Zippo* is a frequently-cited case that attempts to create a sliding scale of sorts to answer the question of whether a website is sufficiently robust, and focused, so as to be considered a targeted "commercial activity" towards a forum such that a company should be subject to specific jurisdiction there. *Zippo* explains:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.

---

[1] Plaintiff points to another website—*www.jpauljoneslp.com*—but that website talks only generally of JPJ's corporate structure and redirects consumers to the websites of specific products, such as the EyeVac, for purchasing decisions. It is not clear how the generic corporate website is relevant, and it does not appear that sales are made through it. In any event, this Court will look, instead, to the EyeVac website (*www.eyevac.com*) as that is the focus of the majority of the parties' arguments.

4

> In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id*. at 1124 (internal citations omitted). The Eighth Circuit finds *Zippo* "instructive," and boils the scale down to "active contract formation" on the one end to the "mere posting of information on a website" on the other. *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010). It matters not that a website is "accessib[le] in Missouri alone." *Id.*

The question, thus, is how should a website be treated that does not seem, on its face, to favor any particular state—instead having a broader focus as a nationwide, virtual advertisement—but allows, at checkout, the targeting of specific states through the consumer's choice of shipping location?

Years after *Zippo*, the U.S. Supreme Court issued an admonishment that the "minimum contacts analysis looks to the ***defendant's contacts with the forum state*** [and] not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (emphasis added). Thus, it is not plaintiff's contacts with the forum state, in and of itself, that matters. *Id*. Furthermore, "[e]ven regularly occurring sales of a product in a state do not justify the exercise of [specific] jurisdiction over a claim unrelated to those sales." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 930 n.6 (2011)). Reflecting these realities, one appellate court has highlighted the narrowing of *Zippo* over time, remarking that many post-*Zippo* decisions

5

"have made explicit the requirement that the ***defendant intentionally interact with the forum state via [its] website*** in order to show purposeful availment." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (emphasis added); *see also Northbrook Digitla, LLC. v. Vendio Servs., Inc*., 625 F.Supp.2d 728, 750 (D. Minn. 2008). And, recently, the Fourth Circuit took this to mean that a website engaging in commercial transactions "to anyone who seeks it out, regardless of where they live" does not constitute a website targeting a specific state. *Fidrych v. Marriott International, Inc*., 952 F.3d 124, 141 (4th Cir. 2020) (Marriott's operation of a booking website "available to anyone who seeks it out" did not target a specific state over any other state). The Eighth Circuit, albeit under the nuances of the so-called "*Calder* Effects test" reserved for intentional torts, has spoken in similar terms. *See Johnson*, 614 F.3d at 796 (noting that an at-issue website did not appear to "specifically target" Missouri because any reference to Missouri was "incidental and not performed for the very purpose of having their consequences felt in Missouri").

This Court agrees with the Fourth Circuit's analysis in *Fidrych* as a modern take on *Zippo* in light of cases like *Walden* and *Bristol-Myers Squibb*. Like this case, *Fidrych* involves a website that was quite interactive, allowing consumers to peruse Marriott's many hotels through pictures and videos, along with inputting travel dates, seeing available offers, and booking rooms online. *Id*. at 142. But, again like this case, the website was not designed to create long-term, back-and-forth relationships between Marriott and the consumer; rather, the website was

6

used to "facilitate the making of one-off hotel reservations." *Id*. In the immediate case, JPJ uses its website to make one-off sales transactions and, as necessary, allows "fields service requests" to the extent that a product is faulty (not unlike the offerings of many electric device manufacturers with technical expertise in their own products). But, the relationship is still focused on a single sales transactions: the sale of a vacuum device. It is not the sort of relationship seen in *Zippo*, where a long-term, continuous news subscription service was being offered. *See Zippo*, 952 F.Supp. at 1121.

Similarly, plaintiff, here, falls into the same trap of "focus[ing] much of its attention on the fact that the website includes [Missouri] as an option in the drop-down menu used by customers to select their state of residence" when finalizing a sale. *Fidrych*, 952 F.3d at 142. Missouri's "inclusion in a list of every other state in the country" shows that JPJ "was willing to accept [sales] from [Missouri] residents," but it does not show that JPJ "was targeting [Missouri] residents" specifically. *Id*. at 143. To the contrary, "the list of options confirms that the website was **accessible to all but targeted at no one in particular**." *Id*. (emphasis added); *see also NexLearn, LLC. v. Allen Interactions, Inc.,* 859 F.3d 1371, 1378 (Fed. Cir. 2017) ("Allen's inclusion of Kansas in its dropdown of all states on its website is not enough to subject Allen to jurisdiction in Kansas. Allen's address selector may indicate its amenability to selling ZebraZapps to Kansas residents, but it does not establish minimum contacts arising out of or related to the infringement claim.").

Taken alone, the fact that a website allows a consumer to purchase an item into their state is a focus too strongly pointed at the ***plaintiff's*** forum-related contacts. "To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff[.] But a defendant's relationship with a plaintiff[,] standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286. And it would be a strange result to force JPJ—or any manufacturer for that matter—to use independent, nation-wide intermediaries like Amazon or Ebay in order to escape the hooks of specific jurisdiction. Courts have recognized, and indeed plaintiff does not dispute, that the sale of products through independent, national-wide third-party entities like Amazon and Ebay would not favor specific jurisdiction. *See, e.g., LeDuc Gifts & Specialty Prods., LLC. v. New Thermo-Serv, Ltd*., 382 F.Supp.3d 885, 890 (D. Minn. 2019); *Flipside Wallets, LLC. v. Brafman Group, Inc*., 2020 WL 1330742 at *3 (E.D. Pa. Mar. 19, 2020); *Action Tapes, Inc. v. Weaver*, 2005 WL 3199706 at *3 (N.D. Tex. Nov. 23, 2005); *see also A.T. through Travis v. Hahn*, 341 F.Supp.3d 103, 1038 (E.D. Mo. 2018) (rejecting stream-of-commerce theory that manufacturer should be jurisdictionally linked to the conduct of a third-party distributor in targeting specific states).

In sum, "there is no limiting principle" to plaintiff's argument, a "plaintiff could sue everywhere" so long as "having an interactive website were enough in situations like this one." *Advanced Tactical Ordinance Sys., LLC.*, 751 F.3d at 803. Although JPJ has made sales into Missouri through its website that also sells

8

to any other state at large—the parties' discovery efforts reveal three sales were made to Missourians in 2017—that alone doesn't mean much. Instead, to bring weight behind the idea that a company "targets" a specific forum, a website may only "form the basis for specific jurisdiction if the defendant takes action to maximize usage of the website in the forum, markets the website in the forum, puts forum-specific content in the website, or has a business plan that targets users within [the] forum." *Britax Child Safety, Inc. v. Nuna International B.V.*, 321 F.Supp.3d 546, 556 (E.D. Pa. 2018); *see also Matlin v. Spin Master Corp.* 2018 WL 3496088 at *4 (N.D. Ill. Jul. 20, 2018) ("[T]he common thread between all courts addressing whether defendants are subject to personal jurisdiction [] for having a website that [forum] residents can access to purchase products is that the mere internet sale from a website is insufficient to hale a defendant into the forum's jurisdiction without something more."). Plaintiff identifies no such efforts, and none are apparent in a review of the exhibits or JPJ's website. In fact, it bears emphasizing that *plaintiff never specifically alleges that Gloss Roots purchased the at-issue EyeVac on JPJ's website*. From the present facts, it is just as likely that it purchased the EyeVac from local brick-and-mortar retailers like Sally Beauty Supply or online giants like Amazon and QVC (all referred to in the briefing as JPJ distributors and retailers). So, it is unclear how JPJ's website can constitute the "suit-related conduct" that "create[s] a substantial connection with the forum state." *Walden*, 571 U.S. at 1121.

9

Ultimately, this Court joins with many others in holding that specific jurisdiction does not attach simply because a defendant operates a commercial website that is, at some level, interactive and allow for sales into the forum state. *See Britax Child Safety, Inc*., 321 F.Supp.3d at 556-557 (website must do more than sell into a forum, it must also be designed to target the forum specifically through a business plan, forum-specific content, or other efforts to maximize forum usage); *Matlin*, 2018 WL 3496088 at *4 (recognizing a "common thread between all courts" that personal jurisdiction must be based on more than "the mere internet sale from a website"); *Fidrych*, 952 F.3d at 141 (international hotel chain not subject to specific jurisdiction where website, though interactive, did no more to target South Carolina than any other state); *Lutz v. Rakuten, Inc*., 376 F.Supp.3d 455, 470 (E.D. Pa. 2019) (Japanese-based Rakuten not subject to specific jurisdiction where its website, though highly interactive, did nothing to specifically target Pennsylvania citizens); *see also Johnson*, 614 F.3d at 797 (defendant did not "specifically target Missouri" where any reference to it was incidental and not "uniquely or expressly aimed [] at Missouri"). Having produced no evidence that JPJ specifically targeted Missouri over any other state, JPJ's motion for lack of personal jurisdiction will be granted.

## III. CONCLUSION

Accordingly,

10

**IT IS HEREBY ORDERED** that defendant JPaulJones L.P.'s ("JPJ") motion to dismiss for lack of personal jurisdiction (ECF #11) is **GRANTED**. JPJ is hereby **DISMISSED without prejudice**.

So ordered this 29th day of September 2020.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE